[Civ. No. 16130. Second Dist., Div. Two. May 11, 1948.]

FLORENCE LANDE, Respondent, v. SOUTHERN CALIFORNIA FREIGHT LINES (a Corporation), Appellant.

H. J. Bischoff for Appellant.

Pacht, Warne, Ross & Bernhard, Isaac Pacht and Irving Hill for Respondent.

McCOMB, J.—From a judgment in favor of plaintiff after trial before the court without a jury in an action to recover damages for the breach of written contracts covering the lease of certain motor vehicle equipment, defendant appeals.

Disregarding conflicting evidence the record discloses that prior to 1942 plaintiff was engaged in the trucking business on a small scale, owning two trucks and trailer units. This business was operated by plaintiff's brother who was a truck driver. In 1942 plaintiff, learning that her brother might be inducted into the armed forces, began negotiations with defendant to take over her business and equipment. As a result defendant, by written leases, took over plaintiff's trucking accounts and equipment. The leases provided that defendant would use plaintiff's equipment between Los Angeles and San Diego at a fixed price per round trip with defendant guaranteeing a minimum of five trips per week. There were three separate contracts dated April 20, 1942, July 1, 1942, and September 1, 1942, respectively.

Shortly after the execution of the contracts disputes arose between the parties as to their proper interpretation, and the present action was instituted by plaintiff seeking a judgment for: (1) damages because of breach of the contracts, (2) reformation of the contracts, and (3) declaratory relief.

## QUESTIONS PRESENTED FOR DETERMINATION

First: *Did the trial court commit prejudicial error in awarding damages to plaintiff for failure to operate plaintiff's equipment at least five round trips a week between Los Angeles and San Diego for the reason that the complaint was for equitable relief which was denied, and there was no separate pleading of a cause of action at law alleging a breach of the contracts?*

This question cannot be considered by us for it is the general rule that where a cause is tried and evidence introduced on the theory that material issues have been raised by the pleadings and the trial court renders judgment on such theory, a party will not be allowed for the first time on appeal to complain that such issues were not raised by the pleadings. (*Freeman* v. *Gray-Cowan, Inc.*, 219 Cal. 85, 87 [25 P.2d 415];

*Deseret Water, Oil & Irr. Co.* v. *State,* 176 Cal. 745, 746 [171 P. 287]; *Smithson* v. *Atchison etc. Ry. Co.,* 174 Cal. 148, 155 [162 P. 111]; *Grimes* v. *Nicholson,* 71 Cal.App.2d 538, 543 [162 P.2d 934]; *Asnon* v. *Foley,* 105 Cal.App. 624, 627 [288 P. 792].)

In the present case defendant was apprised by plaintiff's counsel in his opening statement that damages were sought for breach of the guarantee to operate the trucks a minimum of five days per week. The case was tried upon the theory that damages were being claimed for breach of the contracts, and evidence was offered on both sides for and against such issue. Therefore the general rule heretofore stated is applicable and defendant will not for the first time on appeal be permitted to avoid liability by claiming the pleadings did not present the issue to the trial court.

*Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386], relied on by defendant, is not applicable to the facts in the present case. In the cited case the plaintiff sought to enforce an agreement by seeking injunctive relief and an accounting. The judgment of the trial court was reversed for the reason that equitable relief had not properly been granted, and as a result plaintiff was not entitled to an accounting, it being evident that where an accounting is ancillary to equitable relief, if the latter is not properly granted, the accounting must also fail. Such is not the present case in which the relief sought is for a breach of contract, and the issues relative to which were considered by all parties as being clearly defined at the time of the trial.

*Lyon* v. *Goss,* 19 Cal.2d 659 [123 P.2d 11], is likewise inapplicable. In such case the parties did not treat the question of damages as being an issue in the trial court. Therefore in reversing the judgment on the ground that the trial judge had improperly made an award in favor of plaintiff the Supreme Court properly observed that if the parties wished to amend their pleadings and try out the issue of damages for breach of contract such procedure would not be objectionable.

Second: *May a contract be partly written and partly oral?*

This question posed by defendant must be answered in the affirmative in this sense: that a contract or agreement in legal contemplation is neither written nor oral, but oral or written evidence may be received to establish the terms of the contract or agreement between the parties. (See Civ.Code, § 1549; *McNulty* v. *Prentice,* (N.Y.) 25 Barb. 204, 207; *Wil-*

*cox* v. *Cherry,* 123 N.C. 79 [31 S.E. 369, 370]; *Musgrove* v. *City of Jackson,* 59 Miss. 390, 392. See also vol. I, Williston on Contracts (rev. ed.), 1936, § 13, p. 17 et seq., § 221, p. 667.)

■ When the parties have agreed that the terms of the contract are embodied in a written document executed by them, parol evidence is inadmissible to add to, alter, or vary the terms of the contract as set forth in the writing. A so-called partly written and partly oral contract is in legal effect a contract, the terms of which may be proven by both written and oral evidence. (*Fabian* v. *Lammers,* 3 Cal.App. 109, 114 [84 P. 432].)

In the instant case the trial court found, supported by substantial evidence, as follows: "The Court finds that under the terms and provisions of said agreements of April 20, 1942, July 1, 1942, and September 1, 1942, the defendant undertook and agreed to furnish and hire the drivers and operators of each of the vehicles described in each of the said contracts, and the Court further finds that all drivers, operating the vehicles described in the contracts between the parties were, in fact, hired by the defendant and their wages were paid and their duties fully and completely controlled by the defendant. Plaintiff never, at any time, agreed to hire or furnish such drivers or operators."

Predicated upon the foregoing finding the trial court drew the following conclusion of law:

"The Court finds and declares that the plaintiff and defendant intended to and did agree when each of said contracts was executed, as follows: . . . (b) that all employees operating the said described equipment shall be employees of the defendant, furnished, hired, and paid by it, and their duties fully and completely controlled by the defendant."

■ Third: *Should the trial court have made a finding that the contract between the parties was partly oral and partly written?*

This question presented by defendant is immaterial in the instant case for the reason that it is the general rule that if a judgment is supported by the findings it is not prejudicial error to fail to make a finding upon an issue in support of which evidence has been introduced if the finding would necessarily have been adverse to appellant. (*Moss* v. *Underwriters' Report, Inc.,* 12 Cal.2d 266, 271 [83 P.2d 503]; *Mortgage Guarantee Co.* v. *Smith,* 9 Cal.App.2d 618, 621 [50 P.2d 835]. See also cases cited in 10 Cal.Jur. 10-Yr. Supp. (1947 Rev.), Trial, § 188, p. 706.)

■ In the present case, since the trial court found, "Plaintiff never at any time agreed to hire or furnish said drivers or operators," it is clear that had any other findings been made upon the subject of whether the contracts between the parties were written or oral, the trial judge would have found that they were oral, which finding would have been adverse to defendant's position. Therefore the general rule above stated is here applicable and the trial court did not commit prejudicial error in failing to make more specific findings upon the subject.

■ Fourth: *Did the trial court commit prejudicial error in excluding evidence of contracts entered into between defendant and other persons during the period the contracts between plaintiff and defendant were negotiated, and which other contracts were similar to the contracts involved in the present litigation?*

This question must be answered in the negative. It is the general rule that in the absence of a common plan, scheme, habit or usage, contracts between different parties have no probative value in the consideration and interpretation of other and different contracts even though one of the parties may be common to both. (*Sun Oil Co.* v. *Union Drilling etc. Co.,* 208 Cal. 114, 120 [280 P. 535] ; *Mahan* v. *Wood,* 105 Cal. 12, 14 [38 P. 507] ; *Whepley Oil Co.* v. *Associated Oil Co.,* 6 Cal.App.2d 94, 107 [44 P.2d 670] ; *Larimer* v. *Smith,* 130 Cal.App. 98, 103 et seq. [19 P.2d 825].)

The leading case supporting this rule dates back to *Hollingham* v. *Head,* 4 C.B.N.S. 388 (1858), (to show a warranty, by a traveling agent of a manure-company, that his product should be equal to Peruvian guano, evidence that other contracts of his contained such a guaranty was rejected). In passing upon the correctness of the probative value of the particular facts offered, the judge said : "I am of opinion that the evidence was properly disallowed as not being relevant to the issue. It is not easy in all cases to draw the line and to define with accuracy where probability ceases and speculation begins; but we are bound to lay down the rule to the best of our ability. . . . Now it appears to me that the evidence proposed to be given in this case, if admitted, would not have shown that it was more probable that the contract was subject to the condition insisted upon by the defendant. The question may be put thus : Does the fact of a person having once or many times in his life done a particular act in a particular way make it more probable that he has done the

same thing in the same way upon another and different occasion? To admit such speculative evidence would I think be fraught with great danger. . . . If such evidence were held admissible it would be difficult to say that the defendant might not, in any case where the question was whether or not there had been a sale of goods on credit, call witnesses to prove that the plaintiff had dealt with other persons upon a certain credit; or in an action for an assault, that the plaintiff might not give evidence of former assaults committed by the defendant upon other persons, or upon other persons of a particular class, for the purpose of showing that he was a quarrelsome individual and therefore that it was highly probable that the particular charge of assault was well-founded. The extent to which this sort of thing might be carried is inconceivable.''

Applying the foregoing rule to the facts here involved it is apparent that the trial court properly excluded the questioned evidence. The other contracts offered were not material in determining the nature of the transaction between plaintiff and defendant. Since there was an absence of any claim that there was a common plan, scheme, habit or usage followed by plaintiff, the general rule above stated is applicable.

*Moody* v. *Peirano,* 4 Cal.App. 411 [88 P. 380] ; *Lobree* v. *White Lumber Co.,* 53 Cal.App. 85 [199 P. 821], *Bone* v. *Hayes,* 154 Cal. 759 [99 P. 172], *Turner* v. *Luning,* 105 Cal. 124 [38 P. 687], *Asamen* v. *Thompson,* 55 Cal.App.2d 657 [131 P.2d 839], *Swanson* v. *Wilsen,* 13 Cal.App. 389 [110 P. 336], relied on by defendant, are all inapplicable for the reason that in such cases there were a series of agreements, each involving one common party and a number of separate parties, and such evidence was held admissible against the party who was common to all of them as evidence of a common plan, habit or usage, and in the nature of admissions against interest. In the present case, since there was not any common plan, scheme, habit or usage, the evidence would have been merely self-serving declarations of the defendant.

■ Fifth: *Was it prejudicially erroneous for the trial court to make the following conclusions of law: (a) That the contracts entered into between the parties did not correctly state the agreement of the parties in that ''a round trip'' was meant and agreed by the parties to mean one between defendant's terminals and docks in Los Angeles and San Diego; (b) that while units L902 and L903 were in the service of,*

*or in the control of defendant during the term of the agreement of April 20, 1942, the tonnage transported or trips made by said units in any one month on a northbound haul from San Diego to Los Angeles should not exceed 20% of the tonnage transported or number of trips made by said units on the southbound haul from Los Angeles to San Diego for the same period; (c) that units L905 and L909 could not be used for back hauls or for pick-ups and delivery service whether at San Diego or at Los Angeles, but were to be used exclusively for making round trips from the terminal of defendant on Mateo street in Los Angeles to the terminal of defendant at 549 K street, San Diego; and (d) that defendant was obligated to pay plaintiff $3.00 an hour for use of equipment for services other than between defendant's terminals in San Diego and Los Angeles?*

It is unnecessary for us to consider this question for the reason that the trial court found in favor of defendant and held that it had not breached such provision in the contract and did not award plaintiff any damages for such breach. Therefore it is harmless error by which defendant was not prejudiced and will not be considered by us. (*Buck* v. *Canty,* 162 Cal. 226, 236 et seq. [121 P. 924]; *Webb* v. *Boyle,* 125 Cal.App. 326, 328 [13 P.2d 785].)

■ Sixth: *Did the trial court commit prejudicial error in making a conclusion of law that all employees operating the described equipment should be employees of defendant, furnished, hired and paid by it, and that their duties were fully and completely controlled by defendant?*

This question must be answered in the negative. Paragraph II of the questioned lease read as follows: ''That all employees operating the above described motor vehicle shall be employees of the lessee and that all their duties shall be fully and completely controlled by the lessee.'' Evidence was introduced tending to show that after the agreements were entered into, defendant actually furnished the drivers, carried them on its pay roll, and compensated them. Clearly in construing the foregoing provisions of the agreement the evidence just cited sustained the trial court's finding to the following effect:

''The Court finds that under the terms and provisions of said agreements of April 20, 1942, July 1, 1942, and September 1, 1942, the defendant undertook and agreed to furnish and hire the drivers and operators of each of the vehicles described in each of the said contracts, and the Court further

finds that all drivers operating the vehicles described in the contracts between the parties were, in fact, hired by the defendant and their wages were paid and their duties fully and completely controlled by the defendant. Plaintiff never, at any time, agreed to hire or furnish such drivers or operators.''

The foregoing finding clearly supports the conclusion of law here questioned.

 Seventh: *Did the trial court commit prejudicial error in making conclusions of law, (a) that plaintiff was only liable for such expenses of maintenance of operation as repairs, parts, tires, oil, grease etc. attributable to ordinary use, wear and tear, and (b) that all repairs or replacements of parts or tires made necessary by the negligence or carelessness of defendant and its employees or others while the equipment was in the possession of or control of defendant were to be borne by defendant?*

This question must likewise be answered in the negative. The contracts of the parties provided that ''all expenses for maintenance of and operation of said described motor vehicles' equipment, such as repairs, parts, tires, gasoline, grease, oils, etc. shall be borne by and paid for by'' plaintiff. Plaintiff contended that under the contracts she was obligated to pay only ordinary expenses of upkeep and maintenance, and that other expenses, including expenses resulting from misuse of the equipment and negligence in its operation were payable by defendant, and that defendant had wrongfully required plaintiff to pay for repairs and replacements due to damage resulting to the equipment as a result of overloading beyond the limits specified in the contracts. Defendant controverted plaintiff's contentions.

The trial court, supported by substantial evidence, made the following findings relative to these issues:

''That all expenses for maintenance and operation of the said described motor vehicle equipment, such as repairs, parts, tires, gasoline, grease, oils, etc., attributable to ordinary use and wear and tear of the Units shall be borne and paid for by the plaintiff, but that repairs to the Units, replacement of parts or tires made necessary by the negligence or carelessness of defendant or its employees or others or by defendant's violation of the terms of any of the said agreements while the said equipment was in the possession of, or under the control of the defendant, was to be borne by and paid for by the defendant.''

█ It is immaterial that this finding of fact is found among the conclusions of law. Since it is a finding of fact, it will be so treated by this court. (*Linberg* v. *Stanto,* 211 Cal. 771, 776 [297 P. 9, 75 A.L.R. 555] ; *Gossman* v. *Gossman,* 52 Cal.App.2d 184, 191 [126 P.2d 178].)

█ Eighth: *Was there substantial evidence to sustain the following findings of· fact:*

(a) *That defendant wrongfully deducted $866.03 for wages paid drivers from rental accrued under the agreements?*

This finding finds support in the evidence that the agreements between the parties required defendant to use the leased trucks a minimum of five trips per week and compensate the plaintiff for such use. It was alleged that defendant had failed to use the trucks for the minimum number of trips. By way of defense defendant alleged that plaintiff had acquiesced in the use of the trucks for less than five trips in certain weeks with the understanding that the omitted trips would be made up in the future. Evidence was introduced in support of plaintiff's claim and of defendant's claim, and the trial court in performance of its duty weighed the evidence and found in favor of plaintiff.

(b) *That defendant wrongfully deducted $402.45 for shop work from rental accrued under the agreement between the parties?*

This finding is supported by ample direct testimony of witnesses that this shop work was never authorized by plaintiff, and was not a proper charge against plaintiff, and hence that in deducting the same from moneys due plaintiff such deductions were wrong.

(c) *That (i) plaintiff is entitled to damages for injury to equipment in the sum of $3,332.65, and (ii) plaintiff is entitled to damages for injury to tires in the sum of $1,307.20?*

There was substantial direct testimony of witnesses to sustain each of the foregoing findings.

(d) *That plaintiff's cost of operating her equipment for a round trip between Los Angeles and San Diego was $10.50?*

Fred Lande, who acted in the capacity of plaintiff's business partner, testified that plaintiff's cost of operating her equipment on the round trip was $6.50 per unit. On the other hand, defendant's witnesses testified that plaintiff's cost of performance was more than the rental rate provided in the contract. In one contract the rental rate was $25 per round trip; in another it was $31 per round trip. Hence the trial court was called upon to resolve this conflict of evidence

which it did by finding that the cost was $10.50 per round trip, which was a figure less than that testified to by defendant's witnesses. Therefore the finding finds substantial support in the evidence.

(e) *That plaintiff had not acquiesced in defendant's failure to make the minimum number of trips, and had not agreed that the omitted trips could be made up in succeeding weeks?*

This finding finds support in the evidence through direct testimony of two witnesses, Fred Lande and Jacob Lande, that plaintiff had never acquiesced in the failure of defendant to make less than the minimum number of trips or that omitted trips could be made up in succeeding weeks.

(f) *That plaintiff had suffered damages in the sum of $11,519 for trips less than five round trips per week per unit from the date of the contracts to May 29, 1944?*

This finding is supported by direct testimony as to the number of trips omitted for each of the units leased by plaintiff to defendant, and the trial court made findings accordingly. Predicated upon such findings the court correctly awarded damages to plaintiff for the amount of the omitted trips according to the contract price less the cost of performance.

Since the record is free from error the judgment is affirmed.

Moore, P. J., concurred.

Wilson, J., deeming himself disqualified, did not participate in the foregoing opinion.

A petition for a rehearing was denied May 28, 1948. Wilson, J., did not participate. Appellant's petition for a hearing by the Supreme Court was denied July 8, 1948.