[Civ. No. 8728. Third Dist. Mar. 1, 1956.]

M. V. WOMMACK et al., Appellants, v. ROY A. McCLURE, Respondent.

Stanley J. Gale for Appellants.

Dwyer & King and Harold T. King for Respondent.

SCHOTTKY, J.—Plaintiffs M. V. Wommack and Arlie R. Wommack, his wife, have appealed from a judgment in favor of defendant and from the order of court denying plaintiffs' motion to vacate the judgment and for new trial. Plaintiffs sought declaratory relief, cancellation of a lease, and damages.

Appellants are lessors and respondent is the lessee of premises used by respondent for a truck terminal in Sacramento, California. It consists of a service station, truck terminal, and a large storage and repair building near the rear.

Under the lease the premises are divided into two portions. One of these is the "service station portion" under paragraph 3, which also includes approximately 50' x 40' in the northwest corner of the main building, and the other is the "garage portion" under paragraph 4, which provides for the rental "for that portion of the premises not described in Paragraph 3." Different rental formulas are provided for each of the areas. Under paragraph 3, rental was a percentage of the fuel sales with a minimum of $350 per month. Under paragraph 4, rental was a percentage of "all business done" on that portion with a minimum of $250 per month. Paragraph 4 also provided: "The parties do not contemplate the use by the Tenant, himself, of that portion of the premises and that portion of the personal property which is the subject matter of paragraph 4. The subletting of the same by the Tenant to a Sub-Tenant is the plan and agreement of the parties. The certificate, accordingly, giving expression to the net gross sales and charges for any month will of necessity be prepared by the Tenant's Sub-Tenant rather than by the Tenant, himself." Paragraph 4(a) of the lease provided: "It is the express agreement of the parties that there shall be no rental

obligation on the tenant (minimum or additional percentage rental) during any period that the tenant is without a subtenant in the actual use and occupation of that portion of premises and that portion of the personal property which is the subject of paragraph number four (4)."

The lease became effective in March, 1948, and from that time until March, 1949, the garage premises were occupied by a subtenant and the rental was paid regularly. Since that time the garage has had intermittent periods of occupancy and vacancy, and this fact has caused the difficulties resulting in this litigation.

The trial court found that during the months of May, 1949, December, 1949, November, 1950, and February, 1951, C. E. Jacobs stored ice cream trucks on the garage premises with the knowledge and consent of the plaintiffs; that all of the rental paid by Jacobs was paid to plaintiffs, and plaintiffs waived the right to require rental payments by defendant as to the $250 minimum; that in August and September, 1951, Frank Hayashida stored trucks on the garage premises with the knowledge and consent of the plaintiffs; that all of the rental except $10 received by the defendant from Frank Hayashida was paid to the plaintiffs, and plaintiffs waived the $250 rental requirement of the defendant; that in August, September, October, November and December, 1952, and January, 1953, Glenn Wommack, the son of the plaintiff M. V. Wommack, occupied the garage premises with the express agreement that no rental was to be charged the defendant; that from October, 1952, until the time of trial, a certain 30 feet x 60 feet space in the northeast corner of the garage portion was occupied by Dan Caw; that plaintiffs had agreed and consented to withdraw this portion from the lease and to allow the defendant the use of this portion for any purpose without the obligation of rental; that during April, July and September, 1953, the firm of Norman and Goodman occupied the garage premises and plaintiffs expressly accepted $100 in full payment of rental from that firm and waived the right to further payment by defendant.

The court concluded that the plaintiffs are not entitled to recover anything from the defendant, nor are they entitled to cancel or terminate the lease. In its judgment the court also gave declaratory relief to the effect that (A) the defendant is obligated to pay rental of $250 per month at any time when any person occupied the garage portion without the prior

knowledge, consent and agreement of the plaintiffs so long as such persons carry on any substantial activity therein without regard to whether such activity is related to the garage business and no matter what rental is paid by such persons to defendant; that (B) the lease imposes no duty on the defendant to secure subtenants or to attempt to secure subtenants; that (C) the defendant is privileged to refuse to accept a subtenant who does not enjoy a reasonably sound financial and/or business position; that (D) plaintiffs have no right to make a sublease of the garage portion; that (E) under the lease the defendant is not entitled to use a certain 30 feet x 60 feet area in the northeast corner of the garage portion, but "The right of said defendant to use said area is based upon an oral agreement with plaintiffs wherein plaintiffs gave to defendant the right to retain and use said area and wherein plaintiffs agreed that said area would not be subject to the provisions of paragraph 4 of said lease."

Appellants state that they do not contend that the findings are not supported by the evidence but that they do contend that the findings are contrary to law.

■ Appellants first contend that the court erroneously declared in its judgment that "The said lease imposes no duty on the defendant to secure subtenants or to attempt to secure subtenants." However, this declaration must be considered along with the further declaration that respondent is obligated to pay rental of $250 per month if any person occupies the garage portion without appellants' consent and that respondent may refuse to accept a subtenant who is not financially responsible. It is clear that there is nothing in the lease which requires respondent to secure a subtenant but it is also clear that respondent would be liable to appellants if he refused to rent to a proposed tenant who was financially responsible. The situation shown by the record is well expressed by the trial court in its memorandum opinion as follows:

"We next come to the question of the duty imposed upon the defendant lessee here in securing a sub-lessee. Again the answer to this has to be based on sound common sense and business experience. Obviously, it is not going to be helpful to either the plaintiffs or the defendants to have a sub-tenant in the building who is not a reasonable business risk. There was a great deal of implication and argument that the defendant had arbitrarily refused to entertain any sub-tenants in this matter, but the court finds that the evidence does not

support this position. Lessee has the same rights in choosing his sub-tenants as the plaintiff lessor had in choosing his tenant, the defendant. Freedom of contract means the right to determine whether the party with whom you are about to contract is financially sound and of the business caliber that you would reasonably expect under the circumstances. This, it seems to the court, is the duty of the defendant and if actually it can be shown at a future time that he has been arbitrary and has refused a tenant for other motives, that is a factual question to be then decided. The landlord would have no right to place a sub-tenant or sub-lessee in the building since that, of course, would be completely anomalous to the very words we are using. The fact that we are using 'sub' lessee means that that party leases from the defendant, not from the plaintiffs.

"The court feels that the evidence clearly shows that the reason that this building has been vacant so much and that there has been no time at which there has been any need for checking anyone's accounts (since no one did anything like the amount of business necessary to arrive at a rental of $250 per month), is apparently because there is just not the demand for that type of business at that location. The defendant is the tenant of the entire premises and it certainly would be ridiculous for him to place a sub-lessee in the building at a rent below $250 per month which obligates him to pay the plaintiffs that sum."

■ Appellants contend that the court has given effect to an executory oral modification of a written lease when the court found that a certain 30 feet x 60 feet area in the northeast corner of the garage portion, referred to in the record as the "MC" area, was withdrawn from the lease in accordance with an oral agreement wherein plaintiffs gave to defendant the right to retain and use that area without being subject to the provisions of paragraph 4. Respondent argues that the oral agreement was supported by consideration in that when respondent made the agreement he gave up the right to sublease the garage portion of the premises at a rental in excess of $250 per month, permitted appellant Wommack's son to occupy the garage and supplied utilities and restrooms. Furthermore, on many occasions when McClure paid his rent appellant Wommack signed a statement reciting that there was "no tenant in the garage" even though the "MC" premises were occupied by Dan Caw and this fact was known to appellant Wommack.

In the case of *D. L. Godbey & Sons. Const. Co.* v. *Deane,* 39 Cal.2d 429 [246 P.2d 946], the Supreme Court held that where the oral agreement is supported by consideration it may be enforced even though executed only on the side of the party seeking enforcement. This case was followed in *Wade* v. *Markwell & Co.,* 118 Cal.App.2d 410, 421 [258 P.2d 497, 37 A.L.R.2d 1363]. See also 40 Cal.L.Rev. 599, 600. Most of the cases cited by appellants concerning this question are distinguished in the Godbey case.

We are satisfied that the finding of the court that the so-called ''MC'' area was by mutual agreement of the parties withdrawn from the provisions of paragraph 4 of the lease and that respondent was not required to pay any rental therefor is supported by substantial evidence, and further that the oral agreement was supported by sufficient consideration.

Appellants contend also that a controversy exists with regard to an area behind the garage building. Frank Hayashida was engaged in the hauling and trucking business and respondent permitted Frank to park his trucks in this area for two or three years and to store some personal property inside the garage premises. Frank bought all of his fuel and automotive equipment from respondent and was a ''wonderful customer.'' Appellants contend that if the area is part of the premises described by paragraph 4 of the lease, McClure is obligated to pay the minimum rental during the period of occupation by Frank, and that if it is a portion of the premises described by paragraph 3 of the lease, then it falls squarely within the prohibition against subleasing, or subletting, contained in paragraph 14 of the lease. Appellants argue that this cannot be reconciled with the judgment that the lessee was not in default in any way, and that the lessor was not entitled to any relief.

Respondent in reply points out that the trial court found that appellant Wommack knew and consented to the occupancy by Frank of the garage itself and this finding was supported by the evidence. As to ''Frank's Trucking Area,'' respondent argues that a reading of the lease substantiates his position that this area was part of the service station area and therefore came under the provisions of paragraph 3. As to appellants' argument that there has been a violation of the prohibition against assignment or subletting, respondent contends that such issue was not tendered in the pleadings. In this regard appellants argue that the record is clear that all of the matters raised on appeal were fully presented

to the trial court. Appellants cite *Viglione* v. *City & County of San Francisco,* 109 Cal.App.2d 158 [240 P.2d 68], wherein, at page 160, the court said: ". . . that where a cause is tried and evidence introduced on the theory that material issues have been raised by the pleadings and the trial court renders judgment on such theory, a party will not be allowed for the first time on appeal to complain that such issues were not raised by the pleadings." Appellants also cite the case of *Miller* v. *Peters,* 37 Cal.2d 89, 93 [230 P.2d 803], to the same effect. However, it should be pointed out that in the instant case the court did not "render judgment on such theory," so the cited cases are not applicable because the trial court chose to confine its judgment to the issues made by the pleadings. The views of the court as to the issues are thus expressed in its memorandum opinion:

"In Paragraph IV of plaintiffs' complaint, plaintiff alleges that a controversy exists between the parties and sets forth three matters wherein they request the declaratory relief. These are noted A, B, and C. However, when we come to the plaintiffs' brief, plaintiffs are now asking the court to determine sixteen questions which are therein set out.

"At the outset, therefore, the court wishes to remind plaintiffs that while this is a proceeding in equity and the court has a duty to render a declaratory judgment on controversial issues which are juridical in their nature, that does not mean that the court becomes the associate counsel for either side to advise the parties what might be a future ruling of the court on any contingency that may arise."

While the court did not refer specifically in its findings and judgment to any controversy with regard to the area behind the garage, it did find and hold that respondent had not violated the terms of the lease and further that nothing was due from respondent to appellants under the terms of said lease.

Appellants' further contentions that respondent failed to sustain the burden of proving that the proposed subtenants were financially unsound, and that there is some liability on the part of respondent for unpaid rental on the garage portion of the premises by reason of the refusal of respondent to accept three specific subtenants, involve issues of fact which the court, upon sufficient evidence, determined adversely to appellants.

Appellants' final contention is that respondent has breached

the lease by failing to furnish the certificate of gross business done by the subtenants as provided in paragraph 4 of the lease. However, aside from the fact that the lease imposes no obligation on McClure to submit such a certificate, it being the obligation of the subtenant, the trial court found that no subtenant ever had sales in an amount sufficient to bring into play the percentage rental provisions of paragraph 4 of the lease. On this point there was no evidence introduced by appellants.

While the evidence in the instant case was sharply conflicting and showed a somewhat confusing situation, we are satisfied from a study of the entire record that the findings and judgment of the court are supported by substantial evidence and that the court fully and fairly determined the issues that were before it.

The judgment is affirmed. The order denying the motion to vacate the judgment and for a new trial being non-appealable, the appeal therefrom is dismissed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied March 29, 1956, and appellants' petition for a hearing by the Supreme Court was denied April 25, 1956. Spence, J., was of the opinion that the petition should be granted.